1

2

3

4

5

6

7          **UNITED STATES DISTRICT COURT**

8         **SOUTHERN DISTRICT OF CALIFORNIA**

9

| | |
|---|---|
| 10 FLOYD L. MORROW and MARLENE MORROW, as taxpayers of the City of San Diego, State of California, and on behalf of 11 those similarly situated, | CASE NO. 11-cv-1497 - IEG (WVG) **ORDER GRANTING DEFENDANT'S MOTION TO DISMISS** |
| 12                                  Plaintiff, | [Doc. No. 9] |
| 13      vs. | |
| 14 CITY OF SAN DIEGO, a charter city; MANDEL E. HIMELSTEIN, an individual; 15 and DOES 1-100, | |
| 16                                  Defendants. | |

17

18        Presently before the Court is Defendant City of San Diego ("the City")'s motion to dismiss

19   Plaintiff Floyd L. Morrow and Marlene Morrow ("Plaintiffs")'s second amended complaint.  [Doc.

20   No. 9.]  For the following reasons, the Court **GRANTS** Defendant City of San Diego's motion to

21   dismiss.

22                              **BACKGROUND**

23        Plaintiffs are the owners of a duplex commonly known as 2804 and 2806 46th Street, San

24   Diego, CA 92105, Assessor's Parcel Number 476-392-06 ("APN-06").  [Doc. No. 7, SAC ¶ 11.]

25   Since 2006, Plaintiffs have resided in one of the duplex units and have rented the other unit out to

26   tenants.  [Id.]  Plaintiffs also own property to the north of APN-06, known as Assessor's Parcel

27   Number 476-392-11 ("APN-11").  [Id. ¶ 12.]

28        On June 3, 2010, the City issued a Civil Penalty Notice and Order ("the June 3, 2010

                                   - 1 -                                11cv1497

1    Notice") with respect to APN-06, and, on June 4, 2010, the City issued a Civil Penalty Notice and

2    Order ("the June 4, 2010 Notice") with respect to APN-11.  [SAC ¶¶ 25-26; Doc. No. 9-2, Request

3    for Judicial Notice ("RJN"), Exs. D, E.][1]  The notices stated that APN-06 and APN-11 were in

4    violation of various sections of the San Diego Municipal Code and that Plaintiffs were subject to

5    civil penalties for the violations.  [Id.]  The notices ordered Plaintiffs to correct the violations by

6    July 5, 2010 and July 6, 2010, respectively, and stated that failure to comply may result in a civil

7    penalty hearing and the assessment of civil penalties against them.  [Id.]  Plaintiffs allege that due

8    to difficulties with the mail, they did not receive the notices until weeks after they were issued and

9    with only a few days left to comply.  [SAC ¶¶ 25-27.]

10         A civil penalty hearing against Plaintiffs with respect to these violations was commenced

11   on October 14, 2010, and continued on October 21, 2010, November 15, 2010, and November 30,

12   2010.  [SAC ¶ 31; RJN, Ex. A ("Admin. Order").]  Plaintiffs were present at all the hearings and

13   presented evidence on their behalf including various documents and witness testimony.  [Id.]

14   Plaintiffs allege that after the hearings, on December 23, 2010, the City provided an additional list

15   of violations ("Remaining Violations List").  [SAC ¶ 32.]  Plaintiffs allege that they were able to

16   respond to the Remaining Violations List, but that they were not able to cross-examine the City

17   about the demands and violations contained in the list.  [Id. ¶ 33.]

18         On February 15, 2011, the administrative hearing officer, Mandel E. Himelstein, issued an

19   administrative enforcement order ("the Administrative Order").  [Id. ¶ 34; Admin. Order.]  The

20   Administrative Order found that Plaintiffs had violated the sections of the San Diego Municipal

21   Code listed in the June 3, 2010 Notice and the June 4, 2010 Notice and Plaintiffs had not complied

22   with the notices.  [Admin. Order, Findings of Fact ¶¶ 2-3.]  The Administrative Order ordered

23   Plaintiffs to pay (1) $2,250 in civil penalties with a stay of $9,000 pending compliance with the

24   order for the violations related to APN-06; (2) $6,750 in civil penalties with a stay of $15,750

25

26        [1] The City requests that the Court take judicial notice of the June 3, 2010 Notice, the June 4,
     2010 Notice, and the February 15, 2011 Administrative Enforcement Order.  [Doc. No. 9-2, RJN.]
27   Plaintiffs object to the Court taking judicial notice of these documents.  [Doc. No. 13-2.]  Pursuant
     to Federal Rule of Evidence 201, the Court takes judicial notice of these documents because they are
     matters of public record and are part of the administrative record.  See Lee v. City of Los Angeles, 250
28   F.3d 668, 689 (9th Cir. 2001); Mack v. South Bay Beer Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986).
     Accordingly, the Court **GRANTS** the City's requests and **OVERRULES** Plaintiffs' objections.

1  pending compliance with the order for the violations related to APN-11; and (3) $2,303.32 in

2  administrative costs.  [Id., Order ¶¶ 1-2.]  Plaintiffs allege that the City subsequently invoiced

3  them in the amount of (1) $2,303.32 due March 30, 2011; (2) $2,250 due April 15, 2011; and (3)

4  $6,750 due May 1, 2011.  [SAC ¶ 35.]

5        On March 28, 2011, Plaintiffs filed a complaint in state court against Defendants City of

6  San Diego and Mandel E. Himelstein, the hearing officer.  [Doc. No. 1-1, Compl.]  On July 1,

7  2011, the action was removed by Defendants to this Court on the basis of federal question

8  jurisdiction and supplemental jurisdiction.  [Doc. No. 1, Notice of Removal.]  On July 27, 2011

9  Plaintiffs filed their second amended complaint ("SAC") against Defendants alleging seven causes

10  of action: (1) waste of public funds in violation of California Code of Civil Procedure § 526a; (2)

11  violations of their constitutional rights pursuant to 42 U.S.C. § 1983; (3) inverse condemnation;

12  (4) invalidation of proceedings pursuant to California Code of Civil Procedure § 860; (5) writ of

13  mandate pursuant to California Code of Civil Procedure § 1085; (6) writ of prohibition pursuant to

14  California Code of Civil Procedure § 1102; and (7) writ of administrative mandamus pursuant

15  California Code of Civil Procedure § 1094.5.  [Doc. No. 7, SAC.]  On October 7, 2011, the Court

16  dismissed Defendant Mandel E. Himelstein from the action, leaving the City as the only

17  Defendant.  [Doc. No. 19.]  By the present motion, the City seeks to dismiss Plaintiffs' first

18  through sixth causes of action in the SAC.

19                                    **DISCUSSION**

20  **I.      Legal Standards for a Motion to Dismiss**

21        A complaint must contain "a short and plain statement of the claim showing that the

22  pleader is entitled to relief."  FED. R. CIV. P. 8(a).  A motion to dismiss pursuant to Rule 12(b)(6)

23  of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the

24  complaint.  FED. R. CIV. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001).  The

25  court must accept all factual allegations pleaded in the complaint as true, and must construe them

26  and draw all reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty

27  Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).  To avoid a Rule 12(b)(6) dismissal, a

28  complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state

1   a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

2   (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the

3   court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

4   Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

5          However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

6   requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

7   action will not do." Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286

8   (1986)) (alteration in original).  A court need not accept "legal conclusions" as true.  Iqbal, 129 S.

9   Ct. at 1949.  In spite of the deference the court is bound to pay to the plaintiff's allegations, it is

10  not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not

11  alleged or that defendants have violated the . . . laws in ways that have not been alleged."

12  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526

13  (1983).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

14  stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S.

15  Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

16  **II.     Plaintiffs' Constitutional Claims under § 1983**

17         "To establish a prima facie case under § 1983, [a plaintiff] must establish that: (1) the

18  conduct complained of was committed by a person acting under color of state law; and (2) the

19  conduct violated a right secured by the Constitution and laws of the United States." Humphries v.

20  County of Los Angeles, 554 F.3d 1170, 1184 (9th Cir. 2009).  Plaintiffs allege that the City's

21  conduct violated their due process rights under the Fourteenth Amendment, their equal protection

22  rights under the Fourteenth Amendment, and their right to be free from excessive fines under the

23  Eighth Amendment.  [SAC ¶¶ 73-74.]

24         **A.     Procedural Due Process**

25         Plaintiffs allege that the City violated their due process rights by imposing civil penalties

26  and fines on them before providing notice and a meaningful opportunity to be heard or a

27  meaningful opportunity cure any of the purported violations.  [SAC ¶ 73.]  In order to state a claim

28  for violation of procedural due process, Plaintiffs must allege "(1) a deprivation of a

1  constitutionally protected liberty or property interest, and (2) a denial of adequate procedural

2  protections." <u>Kildare v. Saenz</u>, 325 F.3d 1078, 1085 (9th Cir. 2003).  Ordinarily, due process of

3  law requires only notice and an opportunity for some kind of hearing prior to the deprivation of a

4  significant property interest.  <u>Sinaloa Lake Owners Ass'n v. City of Simi Valley</u>, 882 F.2d 1398,

5  1405 (9th Cir. 1989).

6        The SAC alleges that Plaintiffs were provided with both notice and a hearing prior to the

7  imposition of the civil penalties.  Plaintiffs allege that they were provided with notice of their

8  violations as early as June 29, 2010.  [<u>SAC</u> ¶ 29.]  Plaintiffs also allege that civil penalty hearings

9  occurred on October 14, 2010, October 21, 2010, November 15, 2010, and November 30, 2010,

10  and the hearing officer issued a written order imposing the civil penalties on February 15, 2011.

11  [<u>SAC</u> ¶¶ 31, 34-35; <u>see also</u> <u>Admin. Order</u>.]  In addition, the Administrative Order states that

12  Plaintiffs were present for all the hearings and submitted evidence on their behalf including

13  documents and oral witness testimony.  [<u>Admin. Order</u>, Statement of Case.]

14        Plaintiffs argue that the notices the City provided were defective.  [<u>Pl.'s Opp'n</u> at 15.]  The

15  notices were issued on June 3, 2010 and June 4, 2010, respectively.  [<u>RJN</u>, Exs. D, E.]  Plaintiffs

16  allege that due to issues with the mail, they did not actually receive these notices until weeks later.

17  [<u>Id.</u>]  However, Plaintiffs allege that they did receive the notices days before the July 5th and 6th

18  deadlines for compliance and that Plaintiff Mr. Morrow wrote a letter regarding the notices on

19  June 29, 2010.  [<u>Id.</u> ¶¶ 27, 29.]  Therefore, Plaintiffs had notice of the violations at the latest by

20  June 29, 2010.  In addition, Plaintiffs correctly note in their opposition that the hearing officer

21  acknowledged that there were issues with the notices and adjusted the penalty award accordingly

22  to reflect that Plaintiffs likely did not receive notice of the violations until August 31, 2010.

23  [<u>Admin. Order</u>, Findings of Fact ¶ 5.]  The Court notes that this finding by the administrative

24  officer actually appears to be quite generous to Plaintiffs given that they allege that they had notice

25  as early as June 29, 2010, which is more than two months prior to August 31, 2010.  Therefore,

26  any defects that might have occurred with the original notices were remedied by the hearing

27  officer, and Plaintiffs did not suffer a deprivation of property due to the possible defects.

28        Plaintiffs also argue that the hearing was not meaningful.  [<u>Pl.'s Opp'n</u> at 15.]  Plaintiffs

1  allege that after the hearings had concluded, on December 23, 2010, the City provided a

2  Remaining Violations List, which included new violations and demands.  [SAC ¶ 32.]  Plaintiffs

3  further allege that although they were able to respond to the Remaining Violations List, they they

4  were not able to conduct cross-examination with respect to the demands and violations in the list.

5  [Id. ¶ 33.]  Plaintiffs allege that the Administrative Order mimics the Remaining Violations List.

6  [Id. ¶ 34.]  However, the Administrative Order states that the decision was based on the June 3,

7  2010 Notice and June 4, 2010 Notice and that the civil penalties were being assessed for the time

8  period of July 5, 2010 to October 14, 2010.  [Admin. Order, Findings of Fact ¶¶ 3-6,

9  Determination of Issues ¶¶ 3-5.]  Plaintiffs were provided with four hearings beginning on October

10  14, 2010 to address the violations in the two notices for that time period, and Plaintiffs were

11  present at the hearings and were able to present evidence on their behalf.  Therefore, based on the

12  allegations in the complaint, Plaintiffs were provided with notice and an adequate hearing prior to

13  suffering any deprivation by the City.  Accordingly, the Court **DISMISSES WITHOUT**

14  **PREJUDICE** Plaintiffs' due process claim.

15          **B.      Equal Protection Clause**

16          Plaintiffs allege that the City targeted low to moderate income households for a proactive

17  code enforcement program in violation of the Equal Protection Clause.  [SAC ¶¶ 74.]  "The Equal

18  Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person

19  within its jurisdiction the equal protection of the laws,' which is essentially a direction that all

20  persons similarly situated should be treated alike."  Lee, 250 F.3d at 686 (citations omitted).  "To

21  state a claim under 42 U.S.C. § 1983 for a violation of [equal protection] a plaintiff must show that

22  the defendants acted with an intent or purpose to discriminate against the plaintiff based upon

23  membership in a protected class."  Id.

24          Plaintiffs fail to properly plead a cause of action for violation of the equal protection clause

25  because they have not alleged that they are members of a protected class.  Plaintiffs argue that the

26  poor are a suspect class, and discrimination against them is subject to strict scrutiny.  [Pl.'s Opp'n

27  at 13-14.]  However, the Supreme Court has held that the poor are not a protected class, and

28  wealth discrimination alone does not provide an adequate basis for invoking heightened scrutiny.

11cv1497

1    San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973); see also City of Cleburne v.

2    Cleburne Living Ctr., 473 U.S. 432, 440-42 (1985) (listing the constitutionally recognized

3    protected classes).

4         An equal protection claim can also be alleged under the class-of-one theory.  Engquist v.

5    Or. Dep't of Agric., 478 F.3d 985, 992 (2007) (citing Willowbrook v. Olech, 528 U.S. 562

6    (2000)).  A plaintiff properly pleads a class-of-one equal protection claim, where the plaintiff

7    "alleges that she has been intentionally treated differently from others similarly situated and that

8    there is no rational basis for the difference in treatment."  Willowbrook, 528 U.S. at 564.  Plaintiffs

9    do not allege that they were treated differently than similarly situated individuals.  To the contrary,

10   the SAC alleges that they were treated similarly to other low to moderate income households.

11   [SAC ¶¶ 74.]  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' equal

12   protection claim.

13        **C.     Excessive Fines Clause**

14        Plaintiffs allege that the civil penalties assessed against them in the Administrative Order

15   were excessive in violation of the Eighth Amendment.  [SAC ¶¶ 73.]  The Eighth Amendment

16   provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual

17   punishments inflicted."  U.S. CONST. amend. VIII.  An excessive fines analysis involves two steps:

18   (1) whether the Excessive Fines Clause applies, and (2) if so, whether the fine is "excessive."

19   Engquist v. Oregon Dept. of Agriculture, 478 F.3d 985, 1006 (9th Cir. 2007) (citing United States

20   v. Bajakajian, 524 U.S. 321, 334 (1998)).

21        The Excessive Fines Clause "applies only to government action that constitutes

22   'punishment for some offense.'"  Engquist, 478 F.3d at 1006.  California courts have held that civil

23   penalties "are punitive in character."  People v. Union Pacific Railroad Co., 141 Cal. App. 4th

24   1228, 1258 (2006).  Therefore, the Excessive Fines Clause applies to the civil penalties that were

25   assessed against Plaintiffs in the Administrative Order.

26        A fine is excessive "if it is grossly disproportional to the gravity of a defendant's offense."

27   Bajakajian, 524 U.S. at 334.  Although there is "no set formula for determining the proportionality

28   of a given penalty, relevant factors include the severity of the offense, the statutory maximum

1 penalty available, and the harm caused by the offense." Horne v. United States Dep't of Agric.,

2 2011 U.S. App. LEXIS 15284, at *35 (9th Cir., Jul. 25, 2011).

3        The administrative order states that civil penalties of $250 per day were assessed against

4 Plaintiffs with respect to APN-6 for violations of San Diego County Municipal Code sections

5 121.0302, 129.0702, 142.1110, 142.0560(d)(1), 142.0510(e), 142.0560(h)(1), 131.0431(b),

6 129.0702(a)(2),[2] and 142.0510(b) for a total penalty of $11,250 with a stay of $9,000 pending

7 compliance with the order. [Admin. Order, Findings of Fact ¶ 3.] Civil penalties of $500 per day

8 were also assessed against Plaintiffs with respect to APN-11 for violations of San Diego County

9 Municipal Code sections 121.0302, 129.020, 129.0111, 129.0302, 129.0314, 129.0402(a),

10 129.0405(e), 129.0602, 143.0110(a)(1)(2), 143.0141(i), and 142.0142 for a total penalty of

11 $22,500 with a stay of $15,750 pending compliance with the order. [Id., Findings of Fact ¶ 4.]

12        The Supreme Court has noted that "judgments about the appropriate punishment for an

13 offense belong in the first instance to the legislature." Bajakajian, 524 U.S. at 336. Accordingly,

14 the imposition of a fine that is less than what legislature has authorized "weighs heavily against

15 finding the fine grossly disproportional." Horne, 2011 U.S. App. LEXIS 15284, at *36; see also

16 United States v. 817 N.E. 29th Drive, 175 F.3d 1304, 1309 (11th Cir. 1999) (stating that if the fine

17 "is within the range of fines prescribed by Congress, a strong presumption arises that the forfeiture

18 is constitutional.").

19        The San Diego Municipal Code states that a violation of any of the provisions of the code

20 shall constitute a misdemeanor and shall be punishable by a fine of not more than $1,000. S.D.,

21 CAL., MUNI. CODE § 12.0201. The code further states that each person shall be charged with a

22 separate offense for each day a violation is committed or continued. Id. The code's $1,000 fine is

23 within the range proscribed by the California Penal Code, which provides that misdemeanors are

24 punishable by a fine not exceeding $1,000. CAL. PEN. CODE § 19. The Administrative Order

25 shows that the penalties of $500 per day and $250 per day were within the range proscribed by the

26

27       [2] The Court notes that the Administrative Order lists this violation as "129.0602(a)(2) (public
improvement permit)." However, this appears to be a typographical error because the violation listed
28 in the June 3, 2010 notice was for section 129.0702(a)(2) [RJN, Ex. D], and section 129.0702 governs
public improvement permits. See S.D., CAL., MUNI. CODE § 129.0702(a).

1   legislature for the multiple violations and well below the maximum penalty.  In addition, a large

2   portion of the penalties were stayed pending compliance with the order.  Further, the number of

3   code sections that Plaintiffs were found to be in violation of shows the severity of their conduct.

4   In light of these factors, even taking the allegations in the complaint as true, the civil penalties

5   were not grossly disproportionate as a matter of law and were not "excessive" in violation of the

6   Eighth Amendment.  Accordingly, the Court **DISMISSES WITH PREJUDICE** Plaintiffs'

7   excessive fines claim.

8   **III.     Inverse Condemnation**

9          Plaintiffs allege that the City has repeatedly prevented Plaintiffs from engaging in the

10  permitting process and prohibited Plaintiffs from making use of their property rendering both

11  APN-06 and APN-11 valueless.  [SAC ¶¶ 78-80.]  Plaintiffs seek compensation for the alleged

12  takings.  [Id. ¶¶ 82-83.]  Although Plaintiffs' SAC does not specify whether its inverse

13  condemnation claim is brought under federal or state law, Plaintiffs argue in their opposition that

14  the SAC alleges both a federal takings claim under the Fifth Amendment and a state law takings

15  claim.  [Pl.'s Opp'n at 16-18.]  The City argues that Plaintiffs' takings claims are not ripe.  [Def.'s

16  Mot. at 14-15.]

17         The Fifth Amendment guarantees that private property shall not "be taken for public use

18  without just compensation."  Agins v. Tiburon, 447 U.S. 255, 260 (1980).  "The paradigmatic

19  taking requiring just compensation is a direct government appropriation or physical invasion of

20  private property."  Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 537 (2005).  However, the

21  Supreme Court has also recognized that "the government regulation of private property may, in

22  some instances, be so onerous" that it may be compensable under the Fifth Amendment.  Id.

23         "A federal takings claim is not ripe until a litigant has '[sought] compensation through the

24  procedures the State has provided for doing so.'"  Spoklie v. Montana, 411 F.3d 1051, 1057 (9th

25  Cir. 2005) (quoting Williamson Cnty Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172,

26  194 (1985)).  This is because "only takings without 'just compensation' violate [the Fifth]

27  Amendment; 'if a State provides an adequate procedure for seeking just compensation, the

28  property owner cannot claim a violation of the Just Compensation Clause until it has used the

1    procedure and been denied just compensation.'"  Suitum v. Tahoe Regional Planning Agency, 520

2    U.S. 725, 734 (1997).

3         California has adequate procedures to compensate property owners for unconstitutional

4    takings.  See, e.g., CAL. CONST., art. I, § 19; Klopping v. City of Whittier, 8 Cal. 3d 39 (1972);

5    Kavanau v. Santa Monica Rent Control Bd., 66 Cal. 4th 761 (1997); see also Equity Lifestyle

6    Props., Inc. v. Cnty of San Luis Obispo, 548 F.3d 1184, 1192 (9th Cir. 2007) ("California's

7    creation and implementation of the Kavanau adjustment process provides 'an adequate procedure

8    for seeking just compensation.'"); S. Pac. Transp. Co. v. Los Angeles, 922 F.2d 498, 505 (9th Cir.

9    1990) (stating that Klopping provides an adequate procedure for obtaining just compensation).

10   However, Plaintiffs do not allege that they have sought compensation in state court for the alleged

11   takings and been denied.  To the contrary, Plaintiffs argue that they are bringing an inverse

12   condemnation claim under state law pursuant to Klopping as part of this lawsuit.  [Pl.'s Opp'n at

13   17-18.]  Accordingly, Plaintiffs' federal takings claim is not ripe, and the Court **DISMISSES**

14   **WITHOUT PREJUDICE** the claim for lack of subject matter jurisdiction.  See Hacienda Valley

15   Mobile Estates v. City of Morgan Hill, 353 F.3d 651, 661 (9th Cir. 2003).

16   **IV.    Plaintiffs' State Law Claims**

17        Plaintiffs' remaining claims arise under California law: waste of public funds in violation

18   of California Code of Civil Procedure § 526a; inverse condemnation under state law; invalidation

19   of proceedings pursuant to California Code of Civil Procedure § 860; writ of mandate pursuant to

20   California Code of Civil Procedure § 1085; writ of prohibition pursuant to California Code of Civil

21   Procedure § 1102; and writ of administrative mandamus pursuant California Code of Civil

22   Procedure § 1094.5.  [SAC ¶¶ 66-70, 77-109.]  Where a district court has dismissed all claims over

23   which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over

24   remaining state law claims.  28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383

25   U.S. 715, 726 (1966) ("[P]endent jurisdiction is a doctrine of discretion, not of plaintiff's right.").

26   When deciding whether to exercise supplemental jurisdiction, the Court considers judicial

27   economy, convenience and fairness to litigants, and comity with state courts.  Gibbs, 383 U.S. at

28   726.  Where all federal claims have been dismissed, the balance of factors usually tips in favor of

1  declining to exercise jurisdiction over the remaining state law claims and dismissing them without

2  prejudice.  Gini v. Las Vegas Metro. Police Dep't., 40 F.3d 1041, 1046 (9th Cir. 1994).  Having

3  dismissed Plaintiffs' federal claims and finding no diversity jurisdiction in Plaintiffs' complaint,

4  the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.

5  Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' state law claims.

6  **CONCLUSION**

7       For the reasons above, the Court **GRANTS** the City of San Diego's motion to dismiss and

8  **DISMISSES WITH PREJUDICE** Plaintiffs' claim for violation of the excessive fines clause and

9  **DISMISSES WITHOUT PREJUDICE** Plaintiffs' remaining claims.  Plaintiffs may file an

10  amended complaint within (20) calendar days from the date of this Order.

11       **IT IS SO ORDERED.**

12  **DATED:** October 18, 2011

13       **IRMA E. GONZALEZ, Chief Judge**
   **United States District Court**

- 11 -

11cv1497