1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

8

## SOUTHERN DISTRICT OF CALIFORNIA

9

FLOYD L. MORROW and MARLENE
MORROW, as taxpayers of the City of San
Diego, State of California, and on behalf of
those similarly situated,

Plaintiff,

vs.

CITY OF SAN DIEGO, a charter city; and
DOES 1-100,

Defendant.

CASE NO. 11-cv-1497 - IEG (WVG)

**ORDER GRANTING IN PART
AND DENYING IN PART
DEFENDANT'S MOTION TO
DISMISS**

[Doc. No. 24]

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Presently before the Court is Defendant City of San Diego ("the City")'s motion to dismiss Plaintiff Floyd L. Morrow and Marlene Morrow ("Plaintiffs")'s third amended complaint ("TAC"). [Doc. No. 24.]  For the following reasons, the Court **GRANTS IN PART** and **DENIES IN PART** the City's motion to dismiss.

## BACKGROUND

Plaintiffs are the owners of a duplex commonly known as 2804 and 2806 46th Street, San Diego, CA 92105, Assessor's Parcel Number 476-392-06 ("APN-06").  [Doc. No. 22, TAC ¶ 11.] Since 2006, Plaintiffs have resided in one of the duplex units and have rented the other unit out to tenants.  [Id.]  Plaintiffs also own property to the north of APN-06, known as Assessor's Parcel Number 476-392-11 ("APN-11").  [Id. ¶ 12.]

On June 3, 2010, the City issued a Civil Penalty Notice and Order ("the June 3, 2010

1    Notice") with respect to APN-06, and, on June 4, 2010, the City issued a Civil Penalty Notice and

2    Order ("the June 4, 2010 Notice") with respect to APN-11.  [TAC ¶¶ 32-33; Doc. No. 24-2,

3    Request for Judicial Notice ("RJN"), Exs. D, E.]¹  The notices stated that APN-06 and APN-11

4    were in violation of various sections of the San Diego Municipal Code and that Plaintiffs were

5    subject to civil penalties for the violations.  [Id.]  The notices ordered Plaintiffs to correct the

6    violations by July 5, 2010 and July 6, 2010, respectively, and stated that failure to comply may

7    result in a civil penalty hearing and the assessment of civil penalties against them.  [Id.]  Plaintiffs

8    allege that due to difficulties with the mail, they did not receive the notices until weeks after they

9    were issued and with only a few days left to comply.  [TAC ¶¶ 33-34, 36.]

10          A civil penalty hearing against Plaintiffs with respect to these violations was commenced

11   on October 14, 2010, and continued on October 21, 2010, November 15, 2010, and November 30,

12   2010.  [TAC ¶ 38; RJN, Ex. A ("Admin. Order").]  Plaintiffs were present at all the hearings and

13   presented evidence on their behalf including testimony, written comments and supporting factual

14   materials.  [TAC ¶¶ 38, 57.]  Plaintiffs allege that after the hearings, on December 23, 2010, the

15   City provided an additional list of violations ("Remaining Violations List") that contained new

16   violations.  [Id. ¶¶ 39-52.]  Plaintiffs allege that they were able to respond to the Remaining

17   Violations List, but that they were not able to cross-examine the City about the demands and

18   violations contained in the list.  [Id. ¶ 44, 53.]  Plaintiffs also allege that they were unable to

19   correct the purported violations prior to being punished.  [Id. ¶ 44.]

20

21          ¹ The City requests that the Court take judicial notice of the June 3, 2010 Notice, the June 4,
     2010 Notice, and the February 15, 2011 Administrative Enforcement Order.  [Doc. No. 24-2, RJN.]
22   Plaintiffs object to the Court taking judicial notice of these documents on the grounds that the Court
     may not take judicial notice of disputed facts.  [Doc. No. 26-1.]  Pursuant to Federal Rule of Evidence
23   201, the Court may take judicial notice of these documents because they are matters of public record
     and are part of the administrative record.  See Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir.
24   2001); Mack v. South Bay Beer Distribs., 798 F.2d 1279, 1282 (9th Cir. 1986); Papai v. Harbor Tug
     and Barge Co., 67 F.3d 203, 207 n.5 (9th Cir. 1995), rev'd on other grounds, 520 U.S. 548 (1997)
25   (taking judicial notice of a decision and order of an administrative law judge).  Moreover, the Court
     only takes judicial notice of the existence of these documents and the statements made in the
26   documents, and not the truth of their contents.  See Cactus Corner, LLC v. United States Dep't of
     Agric., 346 F. Supp. 2d 1075, 1100 (E.D. Cal. 2004).
27
            Plaintiffs also argue that these documents are irrelevant.  However, they are clearly relevant
28   to Plaintiffs' claims related to the City's code enforcement action against them.  [Doc. No. 26-1.]
     Accordingly, the Court **GRANTS** the City's requests and **OVERRULES** Plaintiffs' objections.

On February 15, 2011, the administrative hearing officer, Mandel E. Himelstein, issued an administrative enforcement order ("the Administrative Order").  [Id. ¶ 54; Admin. Order.]  The Administrative Order found that Plaintiffs had violated the sections of the San Diego Municipal Code listed in the June 3, 2010 Notice and the June 4, 2010 Notice and Plaintiffs had not complied with the notices.  [Admin. Order, Findings of Fact ¶¶ 2-3.]  The Administrative Order ordered Plaintiffs to pay (1) $2,250 in civil penalties with a stay of $9,000 pending compliance with the order for the violations related to APN-06; (2) $6,750 in civil penalties with a stay of $15,750 pending compliance with the order for the violations related to APN-11; and (3) $2,303.32 in administrative costs.  [TAC ¶ 55; Admin. Order, Order ¶¶ 1-2.]  Plaintiffs allege that the City subsequently invoiced them in the amount of (1) $2,303.32 due March 30, 2011; (2) $2,250 due April 15, 2011; and (3) $6,750 due May 1, 2011.  [TAC ¶ 56.]

On March 28, 2011, Plaintiffs filed a complaint in state court against Defendants City of San Diego and Mandel E. Himelstein, the hearing officer.  [Doc. No. 1-1, Compl.]  On July 1, 2011, the action was removed by Defendants to this Court on the basis of federal question jurisdiction and supplemental jurisdiction.  [Doc. No. 1, Notice of Removal.]  On October 7, 2011, the Court dismissed Defendant Mandel E. Himelstein from the action, leaving the City as the only Defendant.  [Doc. No. 19.]  On October 18, 2011, the Court granted the City's motion to dismiss Plaintiffs' second amended complaint and granted Plaintiffs leave to file a third amended complaint.  [Doc. No. 20.]

On November 4, 2011, Plaintiffs filed their third amended complaint ("TAC") against the City alleging seven causes of action for: (1) waste of public funds pursuant to California Code of Civil Procedure §§ 526a and 1060; (2) violation of their constitutional rights pursuant to 42 U.S.C. § 1983; (3) inverse condemnation; (4) invalidation of proceedings pursuant to California Code of Civil Procedure § 860; (5) writ of mandate pursuant to California Code of Civil Procedure § 1085; (6) writ of prohibition pursuant to California Code of Civil Procedure § 1102; and (7) writ of administrative mandamus pursuant California Code of Civil Procedure § 1094.5.  [TAC.]  By the present motion, the City seeks to dismiss Plaintiffs' first through sixth causes of action.  [Doc. No. 24.]

1

## DISCUSSION

2

**I.     Legal Standards for a Motion to Dismiss**

3         A complaint must contain "a short and plain statement of the claim showing that the

4 pleader is entitled to relief." FED. R. CIV. P. 8(a).  A motion to dismiss pursuant to Rule 12(b)(6)

5 of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the

6 complaint.  FED. R. CIV. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001).  The

7 court must accept all factual allegations pleaded in the complaint as true, and must construe them

8 and draw all reasonable inferences from them in favor of the nonmoving party.  Cahill v. Liberty

9 Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996).  To avoid a Rule 12(b)(6) dismissal, a

10 complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state

11 a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

12 (2007).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the

13 court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

14 Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 556).

15         However, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

16 requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of

17 action will not do."  Twombly, 550 U.S. at 555 (quoting Papasan v. Allain, 478 U.S. 265, 286

18 (1986)) (alteration in original).  A court need not accept "legal conclusions" as true.  Iqbal, 129 S.

19 Ct. at 1949.  In spite of the deference the court is bound to pay to the plaintiff's allegations, it is

20 not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not

21 alleged or that defendants have violated the . . . laws in ways that have not been alleged."

22 Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526

23 (1983).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

24 stops short of the line between possibility and plausibility of entitlement to relief.'" Iqbal, 129 S.

25 Ct. at 1949 (quoting Twombly, 550 U.S. at 557).

26 **II.     Plaintiffs' Constitutional Claims under 42 U.S.C. § 1983**

27         "To establish a prima facie case under § 1983, [a plaintiff] must establish that: (1) the

28 conduct complained of was committed by a person acting under color of state law; and (2) the

1    conduct violated a right secured by the Constitution and laws of the United States." Humphries v.

2    County of Los Angeles, 554 F.3d 1170, 1184 (9th Cir. 2009). Plaintiffs allege that the City's

3    conduct violated their due process and equal protection rights under the Fourteenth Amendment.

4    [TAC ¶¶ 89-113.]

5            **A.      Procedural Due Process**

6            Plaintiffs allege that the City violated their due process rights by imposing civil penalties

7    and fines on them before providing notice and a meaningful opportunity to be heard. [TAC ¶ 93.]

8    In order to state a claim for violation of procedural due process, Plaintiffs must allege "(1) a

9    deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate

10   procedural protections." Kildare v. Saenz, 325 F.3d 1078, 1085 (9th Cir. 2003). Ordinarily, due

11   process of law requires only notice and an opportunity for some kind of hearing prior to the

12   deprivation of a significant property interest. Sinaloa Lake Owners Ass'n v. City of Simi Valley,

13   882 F.2d 1398, 1405 (9th Cir. 1989).

14          The TAC alleges that Plaintiffs were provided with both notice and a hearing prior to the

15   imposition of the civil penalties. Plaintiffs allege that they were provided with notice of their

16   violations as early as June 29, 2010. [TAC ¶ 36.] Plaintiffs also allege that civil penalty hearings

17   occurred on October 14, 2010, October 21, 2010, November 15, 2010, and November 30, 2010,

18   and the hearing officer issued a written order imposing the civil penalties on February 15, 2011.

19   [TAC ¶¶ 38, 54-55; see also Admin. Order.] Plaintiffs allege that they were present for the

20   hearings and were able to present evidence and testimony. [TAC ¶¶ 38, 57.]

21          Plaintiffs argue that these hearings were not meaningful. [Pl.'s Opp'n at 12-14.] Plaintiffs

22   allege that after the hearings had concluded, on December 23, 2010, the City provided the hearing

23   officer with a Remaining Violations List, which included new violations and demands. [TAC ¶¶

24   39-52, 96.] Plaintiffs further allege that although they were able to respond to the Remaining

25   Violations List, they were not provided with a hearing on the demands and violations in the list.

26   [Id. ¶¶ 44, 53, 57, 96.] However, the Administrative Order states that the decision was based on

27   the June 3, 2010 Notice and June 4, 2010 Notice and that the civil penalties accrued during the

28   time period of July 5, 2010 to October 14, 2010. [Admin. Order, Findings of Fact ¶¶ 3-6,

Determination of Issues ¶¶ 3-5.]  Plaintiffs were provided with four hearings beginning on October 14, 2010 to address the violations in the two notices for that time period, and Plaintiffs were present at the hearings and were able to present evidence on their behalf.  [TAC ¶¶ 38, 57.] Therefore, based on the allegations in the complaint, Plaintiffs were provided with notice and an adequate hearing prior to suffering any deprivation by the City.  Plaintiffs appear to be arguing that the administrative decision was based on the Remaining Violations List and not the two June notices.  [Pl.'s Opp'n at 13-14.]  However, this argument is contradicted by the clear language in the Administrative Order stating that Plaintiffs had violated and remained in violation of the laws set forth in the two June notices, that Plaintiffs had failed to comply with the two June notices, and that the civil penalties accrued from July 5, 2010 to October 14, 2010.  [Admin. Order, Findings of Fact ¶¶ 3-6, Determination of Issues ¶¶ 3-5.]² Because this is now Plaintiffs' third chance to plead a cause of action for violation of their procedural due process rights and they have failed to do so, the Court **DISMISSES** Plaintiffs' due process claim **WITH PREJUDICE**.

### B.  Equal Protection Clause

Plaintiffs allege that the City violated the equal protection clause by engaging in a proactive code enforcement program that targets low to moderate income neighborhoods.  [TAC ¶¶ 102-26.]  "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike."  Lee, 250 F.3d at 686 (citations omitted).  "To state a claim under 42 U.S.C. § 1983 for a violation of [the equal protection clause] a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class."  Id.

Plaintiffs allege that the City's proactive code enforcement program discriminates against them and other low to moderate income households on the basis of their wealth.  [TAC ¶ 103.]

---

² The Court notes that it only takes judicial notice of what statements were made in the Administrative Order and not the truth of the statements.  See Lee, 250 F.3d at 690; Cactus Corner, 346 F. Supp. 2d at 1100.  For example, the Court only takes judicial notice of the fact that the Administrative Order states:  "Appellants violated and remain in violation of the laws set forth in the [two June notices]."  [Admin. Order, Findings of Fact ¶ 6.]  The Court does not take judicial notice over whether Plaintiffs actually did violate the laws set forth in the June notices.

1    However, the Supreme Court has held that the poor are not a protected class, and wealth

2    discrimination alone does not provide an adequate basis for invoking heightened scrutiny.  San

3    Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 28 (1973); see also City of Cleburne v.

4    Cleburne Living Ctr., 473 U.S. 432, 440-42 (1985) (listing the constitutionally recognized

5    protected classes).  Plaintiffs concede that heightened scrutiny does not apply to claims of wealth

6    discrimination, but Plaintiff nevertheless maintain that heightened scrutiny should apply to the

7    City's conduct.  [Pl.'s Opp'n at 15.]  Plaintiffs argue that strict scrutiny should apply because they

8    allege in the TAC that the City of San Diego's policy interferes with their fundamental rights of

9    access to the courts and to privacy.  [Id.]  The TAC alleges that the City's proactive code

10   enforcement program "impermissibly interferes with the exercise of fundamental rights."  [TAC ¶

11   111.]  However, the Ninth Circuit has explained that "zoning and land use issues do not implicate

12   fundamental rights."  Kawaoka v. City of Arroyo Grande, 17 F.3d 1227, 1239 (9th Cir. 1994).

13   Therefore, heightened scrutiny does not apply to the conduct alleged in the TAC.

14          Plaintiffs argue that even if heightened scrutiny does not apply, the City's conduct was not

15   rationally related to a legitimate legislative goal.  [Pl.'s Opp'n at 15.]  When, as here, the

16   distinctive treatment of the plaintiffs does not involve either a fundamental right or a suspect

17   classification, the defendant's conduct "need only be rationally related to a legitimate state

18   interest."  Del Monte Dunes v. Monterey, 920 F.2d 1496, 1508 (9th Cir. 1990).  "Although

19   selective enforcement of valid laws, without more, does not make the defendants' action irrational,

20   there is no rational basis for state action that is malicious, irrational or plainly arbitrary."  Squaw

21   Valley Dev. Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir. 2004); see also Armendariz v. Penman,

22   75 F.3d 1311, 1327 (9th Cir. 1996) ("It is well established that a city may not enforce its zoning

23   and land use regulations arbitrarily.").  Further, even where a defendant is able to successfully

24   assert a rational basis, an equal protection claim still exists if the plaintiff alleges that defendant's

25   asserted rational basis is merely a "pretext" for an improper motive.  See Lazy Y Ranch LTD v.

26   Behrens, 546 F.3d 580, 592 (9th Cir. 2008); Squaw Valley Dev., 375 F.3d at 945-46.

27          In the TAC, Plaintiffs appear to allege that the City did indeed have a rational basis for its

28   alleged proactive code enforcement program.  Plaintiff allege that the purpose of the proactive

1   code enforcement program is "'to assist neighborhood residents and/or property owners in

2   removing slum and blight conditions on a spot basis, eliminate substandard housing conditions,

3   and improve the livability and vitality of the identified deteriorating neighborhoods.'" [TAC ¶

4   105.]  However, Plaintiffs go on to allege that this asserted purpose is merely a pre-text for an

5   improper purpose.  Plaintiffs allege that the City targets low to moderate income neighborhoods to

6   generate revenue because they would be less likely to have money to challenge the City's conduct.

7   [Id. ¶¶ 110, 112.] This alleged improper purpose has no rational relationship to the City's interest

8   in alleviating slum and blight conditions.  See, e.g., Armendariz, 75 F.3d at 1328 (finding that

9   defendants' interest in acquiring plaintiffs' property was unrelated to defendants' interest in

10  preventing safety and sanitation hazards in enforcing the housing code).  Accordingly, Plaintiffs

11  have properly pleaded a causes of action for violation of their equal protection rights, and the

12  Court declines to dismiss this cause of action.[3]

13  **III.   Plaintiffs' Inverse Condemnation Claims**

14          **A.      Federal Takings Claim**

15          The City argues that Plaintiffs' federal takings claim should be dismissed as unripe.

16  [Def.'s Mot. at 6-7.]  The Court has previously dismissed Plaintiffs' federal takings claim as unripe

17  because Plaintiffs have not sought compensation for their alleged takings "'through the procedures

18  the state has provided for doing so.'"  [Doc. No. 20 at 9-10 (quoting Spoklie v. Montana, 411 F.3d

19  1051, 1057 (9th Cir. 2005)).]  Plaintiffs acknowledge this, and state in their opposition that they

20  have limited their takings claim to California law.  [Pl.'s Opp'n at 20.]  However, Plaintiffs' TAC

21  alleges that they are bringing a Nolan/Dolan takings claim, and Plaintiffs' opposition states that

22  Plaintiffs are bringing a Lucas takings claim and a Penn Central takings claim as well.  [Id. at 20;

23  TAC ¶ 119.]  Penn Central, Lucas, and Nolan/Dolan takings claims are takings claims under

24  federal law pursuant to the Fifth Amendment's takings clause.  See Lingle v. Chevron U.S.A., Inc.,

25  544 U.S. 528, 538-40, 546 (2005).  These claims are unripe until Plaintiffs' state law takings claim

26

27          _____

28          [3] The Court notes that an equal protection claim can also be alleged under the class-of-one theory.  Engquist v. Or. Dep't of Agric., 478 F.3d 985, 992 (2007) (citing Willowbrook v. Olech, 528 U.S. 562 (2000)).  However, Plaintiffs concede that they are not attempting to allege a class-of-one equal protection claim.  [Pl.'s Opp'n at 14.]

1   has been resolved.  Accordingly, the Court again **DISMISSES WITHOUT PREJUDICE**

2   Plaintiffs' federal takings claims.

3       **B.    State Law Takings Claim**

4       The City argues that Plaintiffs' state law takings claim is not ripe because Plaintiffs have

5   not received a final administrative decision.  [Def.'s Mot. at 7-9.]  Plaintiffs argue that the

6   allegations in the TAC are sufficient to show that the City has made a final authoritative decision

7   with respect to the two properties.  [Pl.'s Opp'n at 21.]

8       Under California law, "before a plaintiff may establish a regulatory taking, it must first

9   demonstrate that it has received a final decision from the land use authority regarding application

10  of the challenged land use regulation to its property."  Cnty. of Alameda v. Sup. Ct., 133 Cal. App.

11  4th 558, 567 (2005).  "The property owner 'bears a heavy burden of showing that a regulation as

12  applied to a particular parcel is ripe for a taking claim.'"  Id.  The property owner can show that a

13  final decision has been made for ripeness purposes only when it can set forth facts that make a

14  clear, complete, and unambiguous showing that the agency has drawn the line, clearly and

15  emphatically, as to the sole use to which the property may ever be put.  Id.  To do so, a plaintiff

16  must establish that it has submitted at least one meaningful application for a development project

17  which has been thoroughly rejected, and that it has prosecuted at least one meaningful application

18  for a zoning variance, or something similar, which has been finally denied.  Shea Homes Ltd.

19  P'ship v. Cnty. of Alameda, 110 Cal. App. 4th 1246, 1268 (2003).

20      With respect to APN-06, Plaintiffs only allege that they applied for a HELP loan, not a

21  development project.  [TAC ¶ 21.]  Plaintiffs do allege that attempted to apply for a zoning

22  variance for APN-06, but that they were told that the application could not be processed because of

23  the code enforcement case.  [TAC ¶ 35-36; see also Doc. No. 26-5 Request for Judicial Notice Ex.

24  2.][4]  This allegation is insufficient by itself to show that the zoning application was finally denied

25  because it does not state whether the City would process the application once the code

26  enforcement action ended.  With respect to APN-11, Plaintiffs only allege that the City has told

27  

28  _____

[4] Pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of the zoning application because it is a matter of public record.  See Lee, 250 F.3d at 689.

them in writing that the property must remain vacant at all times.  However, Plaintiffs do not

allege that this has occurred after they applied for a development project and a zoning variance and

these applications were denied.  Therefore, even assuming Plaintiffs' allegations are true, they are

insufficient to satisfy Plaintiffs' heavy burden of showing that their takings claim is ripe.  See

Cnty. of Alameda, 133 Cal. App. 4th at 567; Shea Homes, 110 Cal. App. 4th at 1268.

Accordingly, the Court **DISMISSES WITHOUT PREJUDICE** Plaintiffs' state law takings

claim.

**IV.    Plaintiffs' Invalidation Claim**

The City argues that Plaintiffs' invalidation claim should be dismissed because there is no

statute authorizing Plaintiffs to challenge the City's conduct through an invalidation proceeding.

[Def.'s Mot. at 13.]  Plaintiffs argue that an invalidation proceeding is authorized pursuant to

California Government Code §§ 66014, 66022.  [Pl.'s Opp'n at 25.]

California Government Code § 860 "enables a public agency to bring a validation action

'upon the existence of any matter which under any other law is authorized to be determined

pursuant to this chapter, and for 60 days thereafter . . . .'"  Cal. Commerce Casino, Inc. v.

Schwarzenegger, 146 Cal. App. 4th 1406, 1420 (2007) (quoting CAL. GOV. CODE § 860).

California courts have explained that "[t]he validation statutes, i.e., Code of Civil Procedure

section 860 et seq., do not specify the matters to which they apply.  Rather, they apply to 'any

matter which under any other law is authorized to be determined pursuant to this chapter . . . .'"

Cal. Commerce Casino, 146 Cal. App. 4th at 1423 (quoting CAL. GOV. CODE § 860).  Therefore,

courts must look to other statutes to determine if the public agency's actions are subject to

validation under the statute.  See id.

Plaintiffs argue that California Government Code §§ 66014, 66022 authorize an

invalidation proceeding against the City.  [Pl.'s Opp'n at 25.]  Section 66014 applies to local

agency fees for "zoning variances, zoning changes, use permits, building inspections, building

permits and filing applications."  CAL. GOV. CODE § 66014(a); see Barratt American, Inc. v. City

of Rancho Cucamonga, 37 Cal. 4th 685, 691 (2005) (stating that section 66014 covers fees for

"zoning and building permits").  Section 66022 states that this section only applies to "fees,

capacity charges, and service charges described in and subject to Sections 66013, 66014, and 66016." CAL. GOV. CODE § 66022(c).  Plaintiffs do not allege anywhere in the TAC that they have been subjected to fees for zoning or building permits.  [See generally TAC.]  Plaintiffs only allege that they have subjected to civil fines for code violations and administrative costs.  [TAC ¶ 55; see also Admin. Order.]  Therefore, sections 66014 and 66022 do not apply to the conduct challenged in the TAC, and those two statutes cannot be used to authorize an invalidation action against the City based on the allegations in the TAC.  Accordingly, Plaintiffs' invalidation claim is **DISMISSED WITH PREJUDICE**.

**IV.    Plaintiffs' Writ of Mandate and Writ of Prohibition Claims**

The City argues that Plaintiffs' causes of action for writ of mandate and writ of prohibition should be dismissed because civil penalties may only be challenged by writ of administrative mandamus, citing Martin v. Riverside Cnty. Dept. of Code Enforcement, 166 Cal. App. 4th 1406, 1409-10 (2008).[5]  [Def.'s Mot. at 11-12.]  Martin does not appear to hold that civil penalties may only be challenged by a writ of administrative mandamus.  The City's citation is to the background section of the opinion, not than the legal analysis section.  See Martin, 166 Cal. App. 4th at 1409-10.  Further, the portion of the opinion the City cites to does not state anywhere that civil penalties may only be challenged by writ of administrative mandamus.  See id.  To the contrary, the court in Martin stated that there are alternative procedures for challenging an administrative decision, like a ruling on a code violation, such as a *de novo* appeal to the superior court.  Id. at 1412.  Accordingly, the Court declines to dismiss Plaintiffs' causes of action for writ of mandate and writ of prohibition on this basis.

**V.    Plaintiffs' Waste of Taxpayer Funds Claim**

Plaintiffs bring a cause of action for waste of taxpayer funds pursuant to California Code of Civil Procedure sections 526a and 1060.  [TAC ¶¶ 69-88.]

California Code of Civil Procedure section 526a provides in pertinent part:

---

[5]The City also cites to State v. Sup. Ct., 12 Cal. 3d 237, 249 (1974), which states that "an action for declaratory relief is not appropriate to review an administrative decision."  However, this case is inapplicable to these causes of action because they seek injunctive rather than declaratory relief.  [TAC ¶¶ 141-42, 146-27.]

> An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein.

Under this provision, a taxpayer may sue to enjoin wasteful expenditures by state agencies as well as local governmental bodies.  Cates v. California Gambling Control Com., 154 Cal. App. 4th 1302, 1308 (2007).  "While the statute speaks of injunctive relief, taxpayer standing has also been extended to actions for declaratory relief."  Id.  "The purpose of section 526a is to permit a large body of persons to challenge wasteful government action that otherwise would go unchallenged because of the standing requirement."  Id.

"[T]axpayers they have standing under Code of Civil Procedure section 526a to restrain illegal expenditure or waste of city funds on future enforcement of an unconstitutional ordinance or an impermissible means of enforcement of a facially valid ordinance."  Tobe v. City of Santa Ana, 9 Cal. 4th 1069 (1995); see also Chiatello v. City and Cnty. of San Francisco, 189 Cal. App. 4th 472, 483 (2010) ("[I]t is unquestionably waste for government to budget or spend money administering an illegal ordinance.").  A taxpayer waste cause of action does not lie where the challenged governmental action is legal.  Humane Soc'y of the United States v. State Bd. of Equalization, 152 Cal. App. 4th 349, 361 (2007).

Plaintiffs allege that the City's practices, policies, and procedures in imposing administrative charges and civil penalties pursuant to San Diego Municipal Code Article 2, Division 8 are illegal because they are an unconstitutional exercise of judicial power, they violate California Government Code § 53069.4, and they violate the equal protection clause.  [TAC ¶¶ 70-88.]  In its motion to dismiss, the City does not address these allegations of illegal conduct.  Instead, the City first argues that Plaintiffs have not identified what funds are being wasted.  [Def.'s Mot. at 12.]  The City is incorrect.  Plaintiffs have identified in the TAC that the funds that are being wasted are the funds the City uses to administer its allegedly illegal code enforcement program.  [TAC ¶¶ 70-71, 84.]

The City further argues that Plaintiffs' cause of action should be dismissed because Plaintiffs are attempting to vindicate private rights.  [Def.'s Mot. at 12; Def.'s Reply at 7.]

1  California courts have explained that section 526a should not be applied to principally "political"

2  issues and that the term "waste" as used in section 526a means something more than an alleged

3  mistake by public officials in matters involving the exercise of judgment or wide discretion.  See

4  Humane Soc'y, 152 Cal. App. 4th at 356.  However, California courts have also explained that

5  "waste" as used in section 526a applies to the spending of money by the government in

6  administering an illegal ordinance.  See Chiatello, 189 Cal. App. 4th at 483.  Here, Plaintiffs allege

7  that the City has wasted taxpayer funds by administering illegal ordinances.  [TAC ¶¶ 70-88.]

8       The City also argues that this cause of action is time-barred by California Government

9  Code § 66499.37.  [Def.'s Mot. at 12.]  Section 66499.37 is part of the Subdivision Map Act and

10  applies to any action or proceeding to attack, review, set aside, void or annul, a decision

11  concerning a subdivision by an advisory agency, appeal board or legislative body.  Sprague v.

12  County of San Diego, 106 Cal. App. 4th 119, 122, 128 (2003); see also Hensler v. City of

13  Glendale, 8 Cal. 4th 1, 24 (1994) (explaining that section 66499.37 applies to claims related to "a

14  land-use ordinance or regulation enacted under the authority of the Subdivision Map Act").

15  Plaintiffs do not appear to be attacking a decision concerning a subdivision, and the City has not

16  attempted to show that the ordinances Plaintiffs are attacking were enacted under the authority of

17  the Subdivision Map Act.  Therefore, the City has not met its burden of showing that section

18  66499.37 applies to Plaintiffs' claim for waste of taxpayer funds.  See People v. Tehama Cnty. Bd.

19  of Supervisors, 149 Cal. App. 4th 422, 431-32 (2007) (explaining that the party attempting to rely

20  on § 66499.37 as a defense bears the burden of proving its applicability).

21       Finally, the City again argues that this cause of action should be dismissed because civil

22  penalties may only be challenged by writ of administrative mandamus.  [Def.'s Mot. at 11-12.]  As

23  explained above, Martin does not stand for that proposition.  See Martin, 166 Cal. App. 4th at

24  1409-10.  In addition, State's holding that "an action for declaratory relief is not appropriate to

25  review an administrative decision" is inapplicable to taxpayer suits under section 526a attacking

26  the legality of an ordinance.  See, e.g., Subriar v. City of Bakersfield, 59 Cal. App. 3d 175, 194-95

27  (1976).  Accordingly, the Court declines to dismiss Plaintiffs' cause of action for waste of taxpayer

28  funds.

1

## CONCLUSION

2    For the reasons above, the Court **GRANTS IN PART** and **DENIES IN PART** the City of

3  San Diego's motion to dismiss Plaintiffs' third amended complaint.  Specifically, the Court:

4        1.    declines to dismiss Plaintiffs' first cause of action for waste of taxpayer funds;

5        2.    **DISMISSES WITH PREJUDICE** Plaintiffs' second cause of action to the extent

6              it is based on violation of Plaintiffs' due process rights;

7        3.    declines to dismiss Plaintiffs' second cause of action to the extent it is based on

8              violations of Plaintiffs' equal protection rights;

9        4.    **DISMISSES WITHOUT PREJUDICE** Plaintiffs' third cause of action for

10             inverse condemnation as unripe;

11       5.    **DISMISSES WITH PREJUDICE** Plaintiffs' fourth cause of action for

12             invalidation;

13       6.    declines to dismiss Plaintiffs' fifth cause of action for writ of mandate; and

14       7.    declines to dismiss Plaintiffs' sixth cause of action for writ of prohibition.[6]

15       **IT IS SO ORDERED.**

16  **DATED:** January 11, 2012

17                                                       **IRMA E. GONZALEZ, Chief Judge**
                                                         **United States District Court**

18

19

20

21

22

23

24

25

26

27

28
_____

[6] The City of San Diego did not move to dismiss Plaintiffs' seventh cause of action for writ of administrative mandamus.